IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TERRA N. RAYFORD, )
)
    **Plaintiff,** )
)
v. ) CIVIL ACTION 15-0658-WS-B
)
WALMART STORES, INC., )
)
    **Defendant.** )

**ORDER**

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 50). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 51, 52, 55-57),[1] and the motion is

---

[1] The plaintiff styled her response as a "motion to amen [sic] the pleadings of Walmart corporate." (Doc. 55). The document is not in fact a motion because it does not include "[a] request for a court order." Fed. R. Civ. P. 7(b)(1). To the extent her response could be construed as a motion to amend the pleadings, it is **denied** as unsupported and untimely.

The Court entered a briefing schedule establishing a deadline for the plaintiff to file a response and the defendant a reply, with the motion taken under submission on the latter date. (Doc. 53). Subsequently, without request or leave of Court, the plaintiff filed a "response." (Doc. 58). As the Court has noted, "[i]t is of course necessary in an adversarial process that one party have the final word, and in our system it is normally the party with the burden [including] the movant on most motions … that receives whatever benefit that division bestows." *Jackson v. Winn-Dixie, Inc.*, 2008 WL 5401641 at *2 n.1 (S.D. Ala. 2008). As in *Jackson*, the Court declines to consider the plaintiff's unauthorized sur-rebuttal. However, the Court has reviewed its contents, which could not alter any of the Court's determinations herein even had it been timely filed.

Along with its motion for summary judgment, the defendant filed a motion for leave to file exhibit under seal. (Doc. 49). The documents at issue were to be an exhibit to the declaration of a defense witness. (Doc. 52-4 at 6-7). A party seeking to file material under seal is required to file, in camera and under seal, the document proposed to be sealed. General Local Rule 5.2(b)(2). The defendant never did so. Accordingly, its motion for leave to file under seal is **denied**. The Court of course has not relied on the un-filed exhibit.

ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1), the *pro se* plaintiff was employed by the defendant from November 15, 2014 to April 15, 2015. Although it knew when the plaintiff was hired that she had ulcerative colitis, spinal stenosis and multiple herniated discs, the defendant did not reasonably accommodate these conditions but instead subjected her to a hostile work environment and ultimately terminated her, all in violation of the Americans with Disabilities Act ("ADA").[2]

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no

---

[2] The defendants assume the complaint is limited to the three-page form complaint (available on the District website) filed by the plaintiff, which identifies the "acts complained of" as termination and refusal to accommodate. (Doc. 1 at 1). However, in the space for describing "[t]he nature of my complaint, i.e., the manner in which the individual(s) named above discriminated against me in terms of the conditions of my employment," the plaintiff wrote, "See Attached." (*Id*. at 2-3). Attached is a two-page, single-spaced document that makes many specific assertions regarding the defendants' alleged wrongdoing (including episodes of harassment) and explicitly accuses the defendants of "subject[ing] [the plaintiff] to a hostile work environment." (*Id*. at 5-6). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The rule extends beyond formal "instruments" like deeds to exhibits generally. *E.g., Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1297 n.4 (11th Cir. 2015) (affidavit); *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1223 n. 10 (11th Cir. 2012) (spreadsheets); *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1196, 1205 (11th Cir. 2007) (report). Especially given that "*pro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally," *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008), the allegations of the attachment must be construed as allegations of the complaint.

genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the plaintiff's version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the defendants and not in tension with the plaintiff's

version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court accordingly limits its review to those arguments the parties have expressly advanced.

The defendant admits that the plaintiff has ulcerative colitis and spinal stenosis, and for present purposes it concedes that these conditions constitute disabilities within the contemplation of the ADA. The defendant also concedes for present purposes that the plaintiff was otherwise qualified to perform her job in the specialized sense applicable to ADA cases. (Doc. 51 at 4, 14-15).

**I. Exhaustion.**[4]

---

[3] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

[4] The defendant asserts that the plaintiff "conceded" the exhaustion argument by failing to address it in her responsive brief. (Doc. 56 at 1-2). The Court has rejected such arguments as inconsistent with published Eleventh Circuit precedent. *E.g., Polion v. City of Greensboro*, 26 F. Supp. 3d 1197, 1222 (S.D. Ala. 2014); *cf. Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1241-44 (S.D. Ala. 2013) (applying same rule to motions to dismiss). The defendant does not acknowledge these authorities, and nothing in its brief presentation persuades the Court to alter its view.

"A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. ... [I]t is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). "Failure to file a timely complaint with the EEOC mandates the dismissal of the Title VII suit." *Wilson v. Bailey*, 934 F.2d 301, 304 n.1 (11th Cir. 1991). What is true under Title VII is equally true under the ADA. *E.g., Fikes v. Wal-Mart, Inc.*, 322 Fed. Appx. 882, 884 (11th Cir. 2009). The defendant asserts that the plaintiff failed to file a timely charge as to any claim other than discriminatory termination. (Doc. 51 at 11-14).

"[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Department of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotes omitted). Identifying the charge and its contents is thus the critical first step in the analysis. The defendant identifies a particular document as the plaintiff's EEOC charge. (Doc. 52-1 at 45).[5] The defendant, however, has failed to meet its initial burden on motion for summary judgment of demonstrating that this is in fact the relevant document.

The EEOC's right-to-sue letter is dated October 16, 2015. (Doc. 1 at 4; Doc. 52-1 at 46). However, the document the defendant identifies as the charge is dated October 28, 2015 and is stamped as received by the EEOC on October 30, 2015. (*Id*. at 45). The defendant has not explained how the EEOC could have issued a right-to-sue letter before receiving the charge on which the issuance of the right-to-sue letter was based. On the face of things, the document on which the defendant relies cannot be the relevant charge; certainly the defendant has failed to

---

[5] The defendant identifies this document simply as "Pl. Ex. 7," without specifying its location in the file. (Doc. 51 at 12). The document cited by the Court in text is "Defendant's Exhibit 7" to the plaintiff's deposition and is the only document among the defendant's submitted exhibits that purports to be a charge.

5

demonstrate the absence of any genuine issue of fact as to what constitutes the charge. Because the defendant's exhaustion argument fails at this threshold point, the Court need not consider the argument further.[6]

**II. Reasonable Accommodation.**

"[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made …." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). "[A]t a minimum, the employee must request some change or adjustment in the workplace *and* must link that request to his disability, rather than simply presenting the request in a vacuum." *Williamson v. Clarke County Department of Human Resources*, 834 F. Supp. 2d 1310, 1320 (S.D. Ala. 2011) (emphasis in original). The defendant argues that the plaintiff did not make such a linked request and therefore did not trigger any duty on the defendant to accommodate her disability. (Doc. 51 at 19-20).

The plaintiff was employed as a cashier under the supervision of assistant store manager Tedie Mulligan. (Doc. 52-3 at 2). According to the defendant's evidence, the plaintiff's ulcerative colitis would flare up and require emergency trips to the restroom. (Doc. 52-1 at 17, 34-35). According to the defendant's evidence, the registers closest to the restroom were less busy than other registers and more likely to have interludes with no one in line, during which a cashier could turn off the light, log out and go to the restroom. (*Id*. at 18, 35). According to the defendant's evidence, when the plaintiff first started work, she talked to Mulligan, who told her that, on bad days when her stomach was bothering her, she

---

[6] The Court does note, however, that the plaintiff attached to her complaint not only the right-to-sue letter but a document that "request[s] reconciliation of my file." (Doc. 1 at 5-6). Because the document includes the number of the plaintiff's charge, it is likely not the plaintiff's initial filing with the EEOC but, because it is undated, it remains possible that it was received by the EEOC prior to its issuance of a right-to-sue letter. The document explicitly describes a "refus[al] to accommodate" and a "hostile work environment" as well as termination based on disability.

should ask the lower-tier supervisors to put her on those registers since she would have to be running to the bathroom a lot. (*Id*. at 17-18, 34-35).

The defendant asserts that the plaintiff did not tell Mulligan the reason she requested to work the less busy registers was her ulcerative colitis and that she therefore did not "link" her accommodation request to her disability. (Doc. 51 at 19-20). However, the plaintiff's testimony discussed above contradicts the defendant's contention. Mulligan herself, in testimony relied upon by the defendant, testified that the plaintiff told Mulligan she preferred to work on a register near the restroom "due to a medical condition." (Doc. 52-3 at 6).

The defendant notes that, when the plaintiff made this request for accommodation, Mulligan told her to go to Human Resources and to bring to Mulligan medical documentation of her condition. (Doc. 52-3 at 6). The defendant says the plaintiff never did either, (Doc. 51 at 19), but the testimony on which it relies says only that the plaintiff did not "submit anything in writing to Walmart about [her] disabilities." (Doc. 52-1 at 19).

Nor has the defendant attempted to establish that the plaintiff's asserted failure to approach Human Resources absolves it of liability. The defendant suggests that corporate policy requires the employee to personally contact Human Resources before any obligation arises to consider a reasonable accommodation. (Doc. 51 at 4). The defendant cites the policy but does not address or analyze its provisions. In fact, the policy says that a request for reasonable accommodation may be made to a Human Resources representative *or* "any salaried member of management." (Doc. 52-3 at 14).[7] Moreover, "[a]s soon as you request an accommodation based on a medical condition, we will begin working with you to determine whether or not you are eligible for" a reasonable accommodation. (*Id*.). As part of the defendant's initial response to a request for accommodation, the employee "will be given" a packet of information and a request for

---

[7] The defendant, who bears the initial burden on the instant motion, has not suggested that Mulligan – an assistant store manager – is not salaried.

accommodation form, (*id*.), which Mulligan does not purport to have done. The policy further provides that, when an accommodation is requested, "we may request that you provide medical documentation regarding your condition in order to assist us in evaluating your request." (*Id*.). It is at least a reasonable reading of these provisions that corporate policy required only that the plaintiff request accommodation from Mulligan, with it then incumbent on Mulligan to forward the request to Human Resources to "begin working with" the plaintiff, provide her the form and packet and, perhaps, request medical documentation of her condition. Under this construction, which the Court must accept on the instant motion, it was the defendant rather than the plaintiff that violated corporate policy.

"In the reasonable-accommodation context, the ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Williamson*, 834 F. Supp. 2d at 1319 (internal quotes omitted). Even were the defendant's construction of the policy correct, it has failed to show that a policy of ignoring a known request for reasonable accommodation made to line management merely because the employee did not repeat the request directly to the human resources department would comport with the "interactive process" mechanism contemplated by the ADA. As noted, the Court will not endeavor to bridge the gap on the defendant's behalf.

### III. Hostile Work Environment.

Although ignored by the defendant, the complaint includes a claim for hostile work environment. (Doc. 1 at 5-6). *See* note 2, *supra*. The defendant's failure to address this claim leaves it intact.

**IV. Other Acts of Discrimination.**

In her deposition, the plaintiff complained about a failure to transfer her to another department. (Doc. 52-1 at 9, 27). The defendant correctly points out that the complaint does not mention this incident or allege it as an act of discrimination. (Doc. 51 at 15-16 & 16 n.5). This incident therefore cannot form the basis of a separate discrimination claim over the defendant's objection. However, to the extent the plaintiff asserts she sought transfer as a reasonable accommodation of her disability, (Doc. 52-1 at 9), the defendant's failure to effectively address the accommodation claim leaves failure to transfer as part of that claim.[8]

**V. Termination.**

Absent direct evidence (which the plaintiff does not claim to possess, (Doc. 52-1 at 25-26)), a plaintiff claiming disability discrimination must utilize the *McDonnell Douglas* model devised in the Title VII context. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). "To make a prima facie case of discrimination under the ADA, [the plaintiff] had to show a disability (whether real or perceived), that she was otherwise qualified to perform the

---

[8] The defendant argues that a discrimination claim based on failure to transfer would fail because the plaintiff did not "express such an interest via Walmart's electronic (computer-based) 'Career Preference' system." (Doc. 51 at 18; Doc. 52-2 at 3). Given the Court's discussion in Part II, and given the plaintiff's testimony that she asked store manager Tim Dorothy directly for the transfer, (Doc. 52-1 at 9), the defendant has failed to show that the plaintiff is precluded from relying on transfer as a reasonable accommodation.

The defendant also argues that a discrimination claim based on failure to transfer would fail because the plaintiff has identified no similarly situated comparators that received more favorable treatment. (Doc. 51 at 18). The defendant, however, has not shown that the existence of a comparator is necessary in the context of an accommodation claim. *See Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (a defendant "is not insulated from liability under the ADA [for failure to reasonably accommodate] by treating its non-disabled employees exactly the same as its disabled employees").

essential functions of the job, and [that] she was discriminated against based upon the (real or perceived) disability." *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002). As noted, the defendant concedes for argument the first two elements of the prima facie case. (Doc. 51 at 14-15).

The Court has previously noted that the broad phrasing of the third element of the prima facie case, if taken literally, threatens to require a plaintiff to prove pretext as part of her prima facie case. *Whitt v. Baldwin County Mental Health Center*, 2013 WL 6511856 at *17 (S.D. Ala. 2013). The Court need not limn the parameters of the third element in detail, because the defendant makes a single, limited argument regarding this element: that the plaintiff can point to no similarly situated comparator who was treated more favorably than she. (Doc. 51 at 15).

The defendant does not point to evidence in the file that either negates the existence of a proper comparator or shows the plaintiff cannot produce such a comparator. Instead, the defendant simply posits that the plaintiff "cannot meet this burden." (Doc. 51 at 15). As noted, however, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Mullins*, 228 F.3d at 1313 (internal quotes omitted).[9]

To meet its intermediate burden, a defendant must articulate a reason "legally sufficient" to justify judgment in its favor *and* must support its articulated non-discriminatory reason "through the introduction of admissible evidence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). The defendant "must present specific evidence regarding the decision-maker's

---

[9] Defendants typically meet their initial burden either by eliciting an admission during discovery that the plaintiff has no comparators or by pinning the plaintiff down in discovery as to who her alleged comparators are, then demonstrating to the Court that none of the alleged comparators are sufficiently similar. The defendant in support of the instant motion did neither; on the contrary, the defendant established that seven of the other 29 temporary associates hired in the fall of 2014 for 180-day terms were retained for a longer period of time than the plaintiff, which relative longevity the defendant equates with more favorable treatment. (Doc. 51 at 9, 23).

actual motivations with regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998). Thus, "[t]he defendant cannot testify in abstract terms as to what might have motivated the decision-maker …." *Id*.

The defendant has presented evidence that Mulligan and Dorothy decided to terminate the plaintiff based on: (1) attendance problems; (2) dress code violations; (3) leaving her register without informing her supervisors; (4) customer complaints about her unfriendliness; and (5) the impending end of her 180-day term of employment as a temporary associate. (Doc. 52-2 at 5; Doc. 52-3 at 4). These are legally sufficient, non-discriminatory reasons for a termination decision.

The Court recently discussed pretext as follows:

> At the third stage of the analysis, the question becomes whether "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 252. The plaintiff "must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id*. at 255. The plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*.; *accord Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012); *Jackson v. State Tenure Commission*, 405 F.3d 1276, 1289 (11th Cir. 2005). Whichever approach is taken, "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman* [*v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000) (en banc)] at 1024-25; *accord id*. at 1037.
>
> When a plaintiff employs the indirect approach, "[t]he inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for [discrimination]." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (internal quotes omitted). The plaintiff's burden is to "demonstrate weaknesses or implausibilities in

11

the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008). To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

    Although "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason," *Springer v. Convergys Customer Management Group Inc.,* 509 F.3d 1344, 1349 (11th Cir. 2007) (emphasis in original) (internal quotes omitted), "[w]here the plaintiff succeeds in discrediting the employer's proffered reasons, the trier of fact may conclude that the employer intentionally discriminated." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 768 (11th Cir. 2005). Because one "permissible inference" flowing from the demonstrated falsity of the employer's articulated reasons is that of unlawful discrimination, "once the plaintiff introduces evidence sufficient to permit the factfinder to disbelieve the employer's proffered explanations, summary judgment is not appropriate ...." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1530 (11th Cir. 1997). What *Combs* phrased as a categorical, the en banc Court in *Chapman* later qualified, explaining that summary judgment will "sometimes be available to an employer in such a case," as when the evidence of falsity is relatively "'weak'" and the evidence of nondiscrimination "'abundant and uncontroverted.'" 229 F.3d at 1025 n.11 (quoting *Reeves*, 530 U.S. at 148).

*Equal Employment Opportunity Commission v. Outokumpu Stainless USA, LLC*, 205 F. Supp. 3d 1287, 1294-95 (S.D. Ala. 2016).

The plaintiff's response to the defendants' motion consists of her two-page "motion," *see* note 1, *supra*, and twenty-five pages of exhibits, many of which contain her handwritten annotations. (Doc. 55). Neither the "motion" nor the annotations are sworn. "Unsworn statements do not meet the requirements of Fed. Rule Civ. Proc. 56(e) and cannot be considered by a district court in ruling on a summary judgment motion." *Carr v. Tartangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (internal quotes omitted); *accord Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1248 n.8 (11th Cir. 2009). "[W]hile these cases were

12

decided under a previous version of Rule 56, the Eleventh Circuit has continued to apply the rule under the current version." *Rachel*, 112 F. Supp. 3d at 1274 (internal quotes omitted).

The defendant, however, raises no objection to the plaintiff's response on this ground. (Doc. 56). "Inadmissible evidence that is considered by a district court without challenge may support a summary judgment." *Munoz v. International Alliance*, 563 F.2d 205, 214 (5th Cir. 1977). *Munoz* "held that, if evidence otherwise inadmissible provoked no timely objection, it could and, if material, should be factored into a summary judgment decision." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (relying on such evidence to find a fact issue unresolvable on motion for summary judgment). While this rule is limited in its application to hearsay evidence, *Jones v. UPS Ground Flight*, 683 F.3d 1283, 1294 n.37 (11th Cir. 2012), it remains effective as to material within the personal knowledge of the presenter. *Id.*; *see also Murrell v. Bennett*, 615 F.2d 306, 310 n.5 (5th Cir. 1080) (even if the plaintiff's statements were not "affidavits" in compliance with Rule 56(e), they were within the plaintiff's personal knowledge and, "[s]ince the defendants did not object to consideration of these statements, they waived the right to prevent their consideration."). The Court therefore will consider those statements within the plaintiff's response that appear to be based on her personal knowledge. *See, e.g., Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1305 n.23 (11th Cir. 2011) (evidence not based on the presenter's personal knowledge "is not evidence a court may consider at summary judgment").

As to attendance, Mulligan states that, after the plaintiff was absent without approval on April 10, 2015, she reviewed the plaintiff's attendance tracking form, (Doc. 52-3 at 10), and discovered the plaintiff had seven unapproved absences and four unapproved tardies, a number unacceptable for any temporary associate. (*Id.* at 4). The plaintiff responds that she "didn't have exsecive [sic] tardies or absences," (Doc. 55 at 2), but it is up to the employer, not the employee, to decide

what constitutes excessive absenteeism or tardiness.[10] The plaintiff does not deny having seven unapproved absences and four unapproved tardies. Instead, she denies that she had twelve tardies or any no-call/no-shows (absence without notice). (*Id*. at 2-3). This is relevant, she says, because Dorothy told her after she was fired that she had twelve tardies and Mulligan told her during her exit interview that she had three no-call/no-shows – assertions the defendant has since admitted are untrue. (*Id*. at 3, 6; Doc. 52-1 at 32). What remains uncontroverted, however, is that the plaintiff had seven unapproved absences and four unapproved tardies, that Mulligan had discovered this only a few days previously, and that the defendant relied on that attendance record in terminating her employment.[11]

As to the plaintiff's compliance with the dress code, Mulligan states the plaintiff repeatedly wore tight-fitting pants that violated the dress code. At least twice, Mulligan told the plaintiff she was in violation of the dress code, but she never sent the plaintiff home to change. (Doc. 52-3 at 2-3). The plaintiff admits she was out of dress code one time and that she was counseled about it. (Doc. 55 at 12). The plaintiff asserts that on all other occasions she was wearing the same pants as her supervisor and so could not have been out of dress code, but she admittedly has no evidence the supervisor was not also counseled for wearing such pants. (Doc. 52-1 at 27). The plaintiff also asserts that, on one of these occasions, the defendant threatened to send her home as soon as she arrived at work (but did

---

[10] "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. Seven unapproved absences in barely two months, (Doc. 52-3 at 10), plainly might motivate a reasonable employer to terminate the offending employee.

[11] The plaintiff stresses that Mulligan told her that two of her three no-call/no-shows occurred in October 2014 – the month before the plaintiff was hired. (Doc. 55 at 3; Doc. 52-1 at 31). The plaintiff thinks that makes the mis-statement more sinister, but what it really does is support Mulligan's testimony that she simply misspoke, (Doc. 52-3 at 5), likely while looking at another employee's attendance tracking form. (Doc. 52-1 at 25, 31). The plaintiff admits Dorothy was going from memory when he mentioned twelve tardies. (*Id*. at 32).

14

not do so) even though three female employees she was relieving had been on duty four or five hours while wearing Spanx in violation of the dress code; again, the plaintiff has no evidence the defendant did not also threaten to send home the other employees. (*Id*.). In short, the plaintiff has no evidence she was in compliance with the dress code or that others who violated the dress code were treated more favorably.

As to the plaintiff's wandering, Mulligan states she received several complaints from customer service managers that the plaintiff had left her register without telling them where she was going. (Doc. 52-3 at 3). The plaintiff responds that "I was never where I wasn't supposed to be." (Doc. 55 at 2). The concern, however, was not that the plaintiff was not supposed to go to the restroom (or anywhere else) but that she would leave her register without proper notice to her supervisors. The plaintiff offers nothing undermining that charge.

As to customer complaints, Mulligan states the store received multiple complaints about the plaintiff "not being friendly in the checkout line." (Doc. 52-3 at 3). The plaintiff responds that she "was never rude to any customers." (Doc. 55 at 2). The plaintiff misses the point. Rudeness is in the eye of the beholder, and what matters is not whether the plaintiff considered herself to be rude but whether the defendant's customers did. Evidently they did, and they felt strongly enough about it to complain to management. A merchandiser depends for its business on customers, and it is not required to retain the services of an employee that customers find "[i]ll-mannered, discourteous, or insulting"[12] just because the employee finds her personality satisfactory. The plaintiff does not deny that the complaints were made or that the defendant took them seriously, and her mere disagreement with the customers' description of her is not evidence of pretext. *See Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The question is not whether [the plaintiff] was aggressive and rude to her

---

[12] American Heritage Dictionary of the English Language 1532 (5th ed. 2011).

colleagues and superiors [but] whether her employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so ….").

As to the impending end of the plaintiff's employment period, the plaintiff was hired as a "temporary Walmart associate." (Doc. 52-1 at 41). Upon being hired, she signed a document confirming that "[y]our employment will be for a maximum length of 180 days, but may be shorter as determined by the needs of the business." (*Id*.). The plaintiff was terminated after approximately 150 days, (Doc. 1 at 2); of the 29 other temporary associates the defendant hired between August and December 2014, the employment of 22 lasted less than 150 days. (Doc. 52-2 at 5). The plaintiff responds that, when she was terminated, "I was not [sic] longer a temp. I was a permanent." (Doc. 55 at 1). Her only evidence of this is that Mulligan "never said your temporary assignment has ended." (*Id*.). However, the plaintiff also directs the Court to Dorothy's testimony that she could not become a permanent employee without corresponding paperwork and that her personnel file contains no such paperwork. (Doc. 55 at 18). In light of this unrebutted evidence, Mulligan's failure to explicitly *call* the plaintiff's employment temporary when firing her means nothing, and the plaintiff's bare *ipse dixit* that she was a permanent employee cannot be viewed as based on her personal knowledge. It is therefore incapable of creating a fact issue as to her job status.

As noted, to survive summary judgment a plaintiff must present a jury issue on pretext as to *each* of the defendant's proffered reasons. *Chapman*, 229 F.3d at 1024-25, 1037. Here, the defendant has offered five legitimate, non-discriminatory reasons for terminating the plaintiff, and the plaintiff in addressing them has failed to proffer sufficient evidence to raise a fact issue on pretext as to *any* of them. That is necessarily insufficient to survive the defendant's motion.

In addition to her challenges directed to individual reasons advanced by the defendant, the plaintiff makes several general objections: (1) she was never

written up or talked to about any of these issues; (2) her "work performance was never a problem"; (3) she "received two awards and multiple compliments"; and (4) after her termination, she went to see Dorothy, who offered to re-hire her. (Doc. 55 at 2, 19).

By her own admission, the plaintiff's first assertion is wrong, at least as to dress code violations. (Doc. 55 at 12). Moreover, it is uncontroverted both that the plaintiff was a temporary associate and that temporary associates can be terminated "at any time, without going through a progressive discipline system," (Doc. 51 at 2; Doc. 52-2 at 3), so a failure to counsel the plaintiff is not at all suspicious. As to the plaintiff's opinion of her work performance, "the fact that she thinks more highly of her performance than her employer does is beside the point," *Alvarez*, 610 F.3d at 1266, because "[t]he pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998). Because the plaintiff does not identify the awards or compliments she received, who gave them or why, they do not draw into question the defendant's evaluation of her work history. And a willingness to re-hire, without more, does not reflect an awareness that the termination was ill-advised, much less unlawful; it as easily reflects an awareness that people can learn from their mistakes and improve if given a second chance.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted** with respect to the plaintiff's claim for discriminatory termination. The defendant's motion is **denied** with respect to the plaintiff's claims for hostile work environment and failure to reasonably accommodate her disability. No other claims have been properly asserted, and no other claims are part of this lawsuit.

DONE and ORDERED this 5th day of July, 2017.

                                          <u>s/ WILLIAM H. STEELE</u>
                                          UNITED STATES DISTRICT JUDGE